**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CAROLE L. TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02: 09-cv-1116 |
| | ) | |
| MARGARET MESSMER, | ) | |
| PATRICIA O'KANE, ANTHONY J. FLATI | ) | |
| AND RICHARD A. FLATI, Co-Executors | ) | |
| of the Estate of Theresa Flati, and | ) | |
| NEGLEY PARK HOMEOWNERS | ) | |
| ASSOCIATION COUNCIL, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER OF COURT

Presently before the Court is the MOTION TO DISMISS AMENDED COMPLAINT, with brief in support, filed by Defendant Negley Park Homeowners Association Council and the MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT, with brief in support, filed by Defendants Margaret Messmer, Patricia O'Kane and Theresa Flati. Plaintiff has filed briefs in opposition to the motions[1] and the matter is now ripe for disposition. For the following reasons, the Motions will be granted and the Amended Complaint will be dismissed in its entirety.

---

[1]      Plaintiff filed her original Complaint on August 20, 2009, to which Defendants each timely filed Motions to Dismiss. Plaintiff filed Responses to these motions on December 14, 2009. While the matter was under consideration by the Court, and without leave of Court being sought, Plaintiff filed an Amended Complaint on December 31, 2009. Thereafter, counsel for each of the Defendants filed Motions To Dismiss the Amended Complaint for all of the same reasons and grounds set forth in their prior Motions to Dismiss the original Complaint. By Text Order of January 21, 2010, the Court notified all parties that Plaintiff's Responses previously filed in opposition to the motions to dismiss the original Complaint would be applied to the pending Motions to Dismiss the Amended Complaint.

<u>**BACKGROUND**</u>

The history between these parties is lengthy and tumultuous.  As will be discussed *infra*, Plaintiff has previously filed claims / complaints against Margaret Messmer and the Negley Park Homeowners Association Council, through its officers, Margaret Messmer, Patricia O'Kane, and Theresa Flati, with the City of Pittsburgh Commission on Human Relations (H-07-004), the U.S. Department of Housing and Urban Development, Office of Fair Housing and Equal Opportunity(HUD Case No. 03-07-0476-8), the Allegheny County Health Department, and the Court of Common Pleas of Allegheny County, Pennsylvania (Civil Division, GD No. 05-11900).

Negley Park Condominium is a four-unit condominium building established in November 1978 under the Unit Property Act, 68 P.S. §§ 700.101-700.805.  It is located on North Negley Avenue in Pittsburgh, Allegheny County, Pennsylvania and commonly known as "Negley Park." The rights, duties, obligations and operation of Negley Park are set forth in certain written documents, including the Code of Regulations of Negley Park (the "Code"), which is filed with the Recorder of Deeds of Allegheny County, Pennsylvania.  Pursuant to the Code, the business and operation of Negley Park are conducted by The Negley Park Homeowners Association Council ("Council"), which consists of three natural persons holding the offices of President, Vice President, and Secretary-Treasurer.

At all times relevant to this litigation, Council consisted of three individuals who own units located at 1402, 1404, and 1408 North Negley Avenue.  Margaret Messmer, an individually named defendant, owns the unit located at 1402 North Negley Avenue and is the Vice President of Council; Patricia O'Kane, an individually named defendant, owns the unit located at 1404 North Negley Avenue and is the Secretary-Treasurer of Council; and Theresa Flati, an individually

2

named defendant, owned the unit located at 1408 North Negley Avenue and was President of Council.[2]

Plaintiff, Carole L. Taylor, purchased the unit located at 1406 North Negley Avenue in April 2003.  Almost immediately after she purchased the unit, Plaintiff began to make complaints about Council "discriminating" against her and began to lodge complaints which involved maintenance issues involving the condominium and the operation / administration of  Council. For example, on September 19, 2003, only five months after Plaintiff purchased her unit, she sent the following letter to Council:

> Dear Council:
>
> Recently, I closed on the unit 1406.  I have requested a copy of the 2003 budget, and to date, I have never received it.  I have been excluded from the council meetings, so that I have no voice.  I have paid condo fees through December 2003.
>
> If these issues are not addressed satisfactorily in the next 30 days, you leave me no choice, but to seek legal remedy.  Common elements are also still unresolved.  A tree is still sitting directly in front of the window, and this was brought to the president of the council's attention, but to no avail.  The attorney for the council must know that I am 25 percent owner, and my interest must also be addressed.
>
> Sincerely,
>
> Dr. Carole L. Taylor
> cc: Council's atty

(See Complaint, Exhibit 6(a)).

An event occurred in early 2005, which escalated Plaintiff's complaints against Council and its members.   Distilled to its essence, Plaintiff believes that she was discriminated against in

---

[2]     Counsel for Theresa Flati filed a Suggestion of Death advising that Ms. Flati died on January 7, 2010.

her attempt to buy the Messmer unit, a claim which was soundly rejected by the Court of

Common Pleas of Allegheny County. The following is a brief chronology of the various

complaints that Plaintiff has filed against Council and its members.

    a.    <u>The Proposed Sale of the Messmer Unit and the State Court Action</u>

On April 3, 2005, Margaret Messmer ("Messmer") entered into a contract to sell her unit

to Marija Dunn ("Dunn") for a sales price of $83,000 and the buyer's covenant to take the

Messmer unit "as-is."

The plain language of the Code conveys to Council only a right of first refusal on the sale

of any condominium unit at Negley Park:

> Any owner who wishes to sell, lease, or rent his unit shall, at least
> thirty (30) days prior to accepting any offer to sell, lease, or rent,
> give <u>to Council</u> written notice of the terms of such offer, which
> notice shall specify the name and address of the offeror.  If, within
> said thirty (30) day period, time being of the essence, <u>Council or its</u>
> <u>nominee</u> submits to the owner <u>an identical or more favorable offer</u>
> to sell, lease, or rent, the selling owner must accept the <u>offer of said</u>
> <u>Council</u> in preference to the original offer described in the notice.

Code, at Article IX, section 6 (emphasis added).  Plaintiff  is not a member of Council nor has she

ever been Council's nominee.

Messmer gave Council timely notice of her intent to sell her unit to Dunn.  On May 15,

2005, Council convened a special meeting to vote on whether it would exercise its right of first

refusal under the code.  Council chose not to exercise its right of first refusal.  Plaintiff attended

the May 15, 2005, special meeting and notified Council and Messmer that she would match the

Dunn offer.  However, because Plaintiff was not "the Council or its nominee,"  Council did not

acknowledge Plaintiff's offer.  Memorandum Opinion of the Honorable Ronald W. Folino at 2.

The closing on the sale of the Messmer unit was scheduled for June 1, 2005.

The sale of the Messmer unit did not take place as scheduled, however, because on May 20, 2005, Plaintiff filed a Complaint and Preliminary Injunction in the Court of Common Pleas of Allegheny County (the "State Action"),[3] which effectively prevented the sale.    In Count I, (Taylor v. Messmer), Plaintiff claimed a right, as a unit owner, to make a matching offer and sought an injunction restraining Messmer from selling "to anyone other than Plaintiff pursuant to the terms of Plaintiff's matching offer."  In Count II, (Taylor v. Negley Park Homeowners Association), Plaintiff requested that the Court dissolve Council and the condominium entity.  In particular, Plaintiff claimed that Council repeatedly had failed to discharge its duties to her, *inter alia*, by

- failing to hold annual meetings;

- failing to conduct biennial elections;

- failing to provide operating statements and an annual budget; and

- failing to repair roof leak and defects, repair or replace sidewalk and other concrete, repair and/or augment exterior lighting, abate large and/or overgrown trees, repair termite damage, repair or replace safety railings, repair plumbing vent stacks and/or drains, and repair or repaint the garage.

On the same date, Plaintiff also filed a Praecipe to index the State Action as a *lis pendens* against the Messmer unit.  *See* Docket Report of the State Action.

The two counts of Plaintiff's State Action claims were severed on November 22, 2005. Plaintiff's case against Council proceeded to a non-jury trial on September 6, 2006.  Despite

---

[3]    Plaintiff's lawsuit was styled "Amended Complaint in Action to Enjoin Sale of Condominium Unit and for Declaratory Relief."

Plaintiff's many claims that Council had failed to maintain Negley Park and operate its business properly, and that it acted with discriminatory intent and motives, the Common Pleas Court found that Council's only breaches of duty to Plaintiff were the failures to hold an annual meeting and election and to provide copies of the operating statement and budget.  All of Plaintiff's other claims against Council, including her discrimination claims and her request for dissolution, were dismissed.  *See* September 11, 2006 Order of Court.

Plaintiff appealed the decision of the Common Pleas Court on her claims against Council to the Pennsylvania Superior Court, which affirmed the trial court's decision in its entirety. Plaintiff then filed a Petition for Allowance of Appeal to the Pennsylvania Supreme Court, which was denied.  She then moved for reconsideration of the order denying her petition for review by the Pennsylvania Supreme Court, which also was denied.  Plaintiff subsequently petitioned the United States Supreme Court for a writ of certiorari, which was denied.  Plaintiff then petitioned the United States Supreme Court to reconsider or rehear her Petition for Writ of Certiorari, which was likewise denied.

Meanwhile, in December 2005, "in an effort to remove the cloud on the title to her unit, and to resolve the lawsuit filed against her by Carole L. Taylor," Messmer agreed to sell her unit to Plaintiff on the matching terms that Messmer had in her agreement with Dunn.  However, Plaintiff then refused to purchase the Messmer unit on the same material terms; specifically, Plaintiff stated that she would never buy a property "as is."  *See* Findings of Fact, Non-Jury Verdict, at ¶ 18.

Messmer filed a four-count counterclaim against Plaintiff claiming: Count I - Attorneys Fees for Filing a Frivolous Action; Count II - Dilatory, Obdurate and Vexatious Litigation Conduct; Count III - Slander of Title (by filing a lis pendens without right, privilege or

justification) and Count IV - Tortious Interference With Contract (by interfering with Messmer's agreement with Dunn).  Judge Folino found that Plaintiff's actions in bringing the lawsuit against Messmer were without any proper basis and as a result Messmer had incurred substantial damages.  The judge assessed damages against Plaintiff in the amount of $148,923.70 and sanctioned Plaintiff's counsel in the amount of $20,000.  *See* Non-Jury Verdict, dated February 1, 2008.

Plaintiff appealed the verdict to the Pennsylvania Superior Court.  On September 1, 2009, the Superior Court affirmed the verdict in its entirety.

b.    Discrimination Claims Made to the City of Pittsburgh, Commission on Human Relations and the U.S. Department of Housing and Urban Development

Plaintiff first contacted the City of Pittsburgh, Commission on Human Relations ("Pittsburgh Commission"), on June 21, 2005.  In her letter, she raised with the Pittsburgh Commission the same claims and issues that she had raised with the Court of Common Pleas in the State Action, *i.e.*, alleged discrimination in the sale of the Messmer unit and discriminatory operation of Negley Park byCouncil with respect to voting and elections, abatement of trees and bushes, repair of concrete, curbs, steps, walkways and roof, and improvement of lighting conditions.

On May 10, 2007, Plaintiff filed a formal complaint with the Pittsburgh Commission.  On or about the same day, she also filed a Housing Discrimination Complaint with the U.S. Department of Housing and Urban Development ("HUD").  Pursuant to 42 U.S.C. § 3610(f), Plaintiff's HUD Complaint was consolidated with the Pittsburgh Commission proceedings.

On July 31, 2007, the Pittsburgh Commission held a hearing.  Plaintiff was represented by legal counsel throughout the proceeding.  On November 5, 2007, the Commission dismissed Plaintiff's housing discrimination claims for lack of probable cause.  Thereafter, Plaintiff requested reconsideration of the Commission's finding of a lack of probable cause.  An evidentiary hearing was held on January 25, 2008.  On May 5, 2008, the Compliance Review Section of the Commission voted to affirm the Commission's prior decision to dismiss the housing discrimination action for lack of probable cause.  Plaintiff did not appeal the Commission's decision to the Court of Common Pleas.

      c.      <u>Complaints Made To The Allegheny County Health Department</u>

Around the same time that Plaintiff filed her State Court complaint and lis pendens actions, she also began to complain to the Allegheny County Health Department about alleged deficiencies at Negley Park.  For example, in May 2005, she reported that the "1.  The concrete steps are cracked, broken and in need of repair. 2. Infestation of mice on the properties. and 3.  Hedges are overgrown."

In October 2006, Plaintiff reported the following alleged deficiencies: "1. handrail on front steps; 2.  concrete slab at top of steps is a tripping hazard; 3.  concrete public sidewalk is deteriorated; 4.  mold and mildew in basement; 5. overgrown trees in front and rear yards; 6. garage roof is deteriorated; and 7.  rear steps have gaps in railing and missing balusters."

In an undated letter apparently written after her October 2006 complaint, Plaintiff notified the Allegheny County Health Department that "a visitor who came to visit [her], tripped on the top step that has not been fixed.  The lighting of one approximately 40 watt light bulb, does not give

off enough light to secure anyone coming to the building at night.  Please send someone out to verify that none of the issues raised in the complaint [of October 2006] has been done."

The record also contains an April 16, 2007 letter from the Allegheny County Health Department to Council in which it reports that Plaintiff has made the following eight (8) complaints: "1.  no handrail on front steps; 2. concrete slab at top of stairs is a tripping hazard; 3. concrete public sidewalk is deteriorated; 4. mold and mildew in basement; 5. overgrown trees in front and rear yards; 6. garage door is deteriorated; 7.  rear steps have gaps in railing and missing balusters; and 8. mice in basement."


d.     <u>Federal Lawsuit</u>

Plaintiff filed the instant lawsuit on August 20, 2009, by the  filing *pro se* of a "Complaint - Petition -Civil Action Discrimination in Housing."  Named as defendants are Council, the individual members of Council, and Mariji Dunn, the third party who had originally contracted with Messmer to buy the Messmer unit.  Plaintiff again alleges that Council, through its officers, discriminated against her with respect to the proposed sale of the Messmer unit and discriminated against her in the general maintenance and operation of Negley Park Condominiums in violation of sections 3604 and 3617 of the Fair Housing Amendments Act ("FHAA").

Defendants each filed Motions to Dismiss the Complaint, to which Plaintiff responded. On December 17, 2009, Plaintiff filed a "Motion to Withdraw Respondent Marija Dunn" because Plaintiff "cannot directly link [Dunn] to the discrimination practices at this time, even though she did directly participate in an unlawful real estate transaction with Respondent Margaret Messmer in violation of the Negley Park Homeowners Association's Code."  Mot. at ¶ 3.  On December 21, 2009, the Court granted the Motion and Marija Dunn was dismissed from the action.

On December 31, 2009, while the motions to dismiss were under consideration by the Court and without leave of court,[4]  Plaintiff filed an Amended Complaint against Council and  the individual members of Council.  In the Amended Complaint, Plaintiff continues to allege that she has been illegally discriminated against by Defendants due to her race and disability[5] in violation of sections 3604 and 3617 of the Fair Housing Act.

In an often rambling Amended Complaint, Plaintiff attempts to "clarify" her claims by stating:

> [T]he discriminatory practices that the council, carried out by the unit owners who are all Caucasians, members of the Council for the Negley Park Homeowners Association against the Petitioner Carole L. Taylor who is a unit owner, a member of the association, not allowed to be on council for it is the council that holds the power over her, and to keep her from having any voice they elected themselves as the officers, when the code requires for four officers they left the one position vacant given them total power over Petitioner's life- health and well-being, that started the day she purchased her unit, in 2003; the only African-American that has lived in the four unit building;
>
> The sale of a unit in that building is only a small part of the discriminatory practices that were carried out by this powerful group of Respondents, by violating the Code, look the other way, so the unit owner who was selling her unit entered into an unlawful transaction, sold her unit without consulting the associations' council, was only to accept an offer, not a done deal, this is about a code violation, does not compare to the major more egregious violations of the "Code" by this counsel who also holds the positions as the officers, thus complete control the life and well-being of the Petitioner.  Also, having total control of her as they carry out

---

[4]     Effective December 1, 2009, Federal Rule of Civil Procedure 15(a)(B), provides that "a party may amend its pleading once as a matter of course within: (B) . . .  21 days after service of a motion under Rule 12(b), (e), or (f), . . . ."  Defendants filed their Motions to Dismiss on October 21, 2009.  The Amended Complaint, which was filed on December 31, 2009, was clearly filed beyond the time parameters established by amended Rule 15.

[5]     It is not easy to discern from the Amended Complaint if Plaintiff is legally "disabled," although she does that contend that she has "permanent disabilities," and that Council and its members "knew it was a hardship to drag her crippled leg up the many stairs from the street to the unit, . . . [and] that they knew it was unsafe for her to be without appropriate outdoor lighting as she cannot move rapidly, and has poor vision in low light."  Amended Complaint, at 10.

the daily affairs of the association of this four unit condominium complex, these
are the issues that are before this honorable federal court.

Amended Complaint, at ¶¶ (c) and (d), at 4-5.

## STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is a challenge to the legal

sufficiency of the Amended Complaint filed by Plaintiff.  The United States Supreme Court has

held that "[a] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*,

478 U.S. 265, 286 (1986)) (alterations in original).

The Court must accept as true all well-pleaded facts and allegations, and must draw all

reasonable inferences therefrom in favor of the plaintiff.  However, as the Supreme Court made

clear in *Twombly*, the "factual allegations must be enough to raise a right to relief above the

speculative level." *Id.*  The Supreme Court has subsequently broadened the scope of this

requirement, stating that "only a complaint that states a ***plausible*** claim for relief survives a

motion to dismiss." *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937, 1950 (2009) (emphasis added).

However, nothing in *Twombly* or *Iqbal* has changed the other pleading standards for a

motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  That is, the Supreme Court did not impose

a new, heightened pleading requirement, but reaffirmed that Fed. R. Civ. P. 8 requires only a

short, plain statement of the claim showing that the pleader is entitled to relief, not "detailed

factual allegations." *See Phillips v. Co. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citing

*Twombly*, 550 U.S. at 552-53).  Additionally, the Supreme Court did not abolish the Fed. R. Civ.

P. 12(b)(6) requirement that "the facts alleged must be taken as true and a complaint may not be

dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Id.* (citing *Twombly*, 550 U.S. at 553).

Generally, "to the extent that [a] court considers evidence beyond the complaint in deciding a Fed. R. Civ. P. 12(b)(6) motion, it is converted to a motion for summary judgment." *Anjelino v. New York Times Co.*, 200 F.3d 73, 88 (3d Cir. 1999).  However, in resolving a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a court may look beyond the complaint to matters of public record, including court files and records, decisions of government agencies and administrative bodies, and documents referenced in the complaint or which are essential to a plaintiff's claim and are attached to either the Complaint or the defendant's motion.  *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Attached to Plaintiff's Amended Complaint are the letters which she sent to the City of Pittsburgh Commission on Human Relations, the Interim Order of the Pittsburgh Commission, her complaints made to the Allegheny County Health Department, and various Orders from the Court of Common Pleas of Allegheny County, Pennsylvania by the Honorable Ronald W. Folino. Defendants have attached additional pleadings, transcripts, and court orders / opinions  from prior civil and administrative actions.  All of the above named documents are referenced in the Amended Complaint, are essential to Plaintiff's claim, and most are public records.  *Id.* Therefore, the Court has considered these documents without the necessity of converting the motions to dismiss into a motion for summary judgment.  *Id.* at 1196-97.

### LEGAL ANALYSIS

The Amended Complaint states that Plaintiff "is seeking relief to stop the intimidation and discrimination in housing by the Respondents individually, and collectively, as the Officers and

Members of the Negley Park Homeowners Association Council."  Amended Complaint, at 7.

Plaintiff alleges that she "has been denied her right to select housing of reasonable

accommodations, without regard to race, [42 U.S.C.] § 3604 and § 3617, and have (sic) been

deprived of the social and professional benefits of living in an integrated society by the

Respondents using the Negley Park Homeowners Association 'Code'."  *Id.* at 8.

The Fair Housing Amendments Act of 1988 amended the Fair Housing Act of 1968 to

extend protection to people with disabilities.  *See* 42 U.S.C. § 3601, *et seq.*  It appears that

Plaintiff is claiming that Defendants violated the FHAA on the grounds of both her race and her

"permanent disability."

Under the FHAA, Title VIII of the Civil Rights Act of 1968, 42 U.S.C. §§ 3604-31, it is

unlawful for any person to refuse to sell or otherwise make unavailable a dwelling[6] to any person

on the basis of race or "handicap."[7] 42 U.S.C. § 3604(a), (f). To establish a claim under § 3604(a),

a plaintiff must assert, first, that defendants denied or made housing unavailable to her and,

second, that the actions of the defendants were based on plaintiff's race or disability.  A violation

of § 3604(a) may be established by showing that the challenged actions were either (i) motivated

by intentional discrimination or (ii) resulted in a discriminatory effect, even absent evidence of a

---

[6]     The FHAA defines "dwelling" as a "building . . .  designed for occupancy as a residence
by one or more families." *Id.* § 3602(b).

[7]     The FHAA defines "handicap" as:
    (1) a physical or mental impairment which substantially limits one or more of such
person's major life activities,
    (2) a record of having such an impairment, or
    (3) being regarded as having such an impairment . . . .

42 U.S.C. § 3602(h).

discriminatory motive. *Doe v. City of Butler*, 892 F.2d 315, 323 (3d Cir. 1989); *Resident Advisory Bd. v. Rizzo*, 564 F.2d 126, 142 (3d Cir. 1977).

It is also unlawful to "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of . . . any right granted or protected by" various sections of the FHAA, including Section 3604. 42 U.S.C. § 3617.

A. <u>Alleged Housing Discrimination in the Proposed Sale of the Messmer Unit</u>

Plaintiff contends that the "sale of a unit in that building is only a small part of the discriminatory practices" on which she has based her allegations. Amended Complaint, at ¶ (d) at 5. The Amended Complaint alleges, *inter alia,* the following:

> The Petitioner has strong standard evidence that the Respondent, Margaret Messmer did indeed violate the Fair Housing Act, "Title VIII, [42 U.S.C. § 3617], by her interference, coercion, and intimidation tactics by and through her legal team, and with the bias way the Pittsburgh Human Relation (sic) commission handled its position in this matter, where there were **76 hours**, found on the Respondent, Margaret Messmer's legal fees invoices, where it shows tremendous evidence of contact of her counsel with the commission and the solicitor, showing inappropriate conduct he had with the commission' representatives, and letters of back door deals to consolidate the Petitioner's complaint, unbeknown (sic) to her, until after it was done, and to combine her two claims into one, with the commission and HUD Agencies with the sole control both complaints be with the commission.. . . .

Amended Complaint, at 5 (emphasis in original).

Further, the Amended Complaint alleges that:

> The Respondents did err in violating the code of the Negley Park Homeowners Association <u>in the handling of the sale of the unit,</u> just so Margaret Messmer, a Caucasian female, owner of unit 1402, North Negley Avenue, who is a member of council, and also elected herself as an officer, along with her Aunt, Patricia O'Kane a unit owner, a member of council and elected herself as an officer, and their close friend, a unit owner, a member of council, elected herself as an officer, thus, having total control of the decision making of the business affairs of the condominium complex, thus, holds total control over the Petitioner, the only

African American, who lives there, disregarding their actions were causing irreparable harm to her health, and well-being, and the enjoyment of her own unit . . . .

Amended Complaint at 23 (emphasis added).

Before the Court can determine whether Plaintiff has made out a *prima facie* case of housing discrimination in the proposed sale of the Messmer unit, the Court must first determine whether the actions of Defendant Messmer and Council implicate the FHAA.

Section 3604(a) of the FHAA provides in pertinent part as follows:

[I]it shall be unlawful -

(a) To refuse to sell or rent after the making of a <u>bona fide offer</u>, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable to deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.

42 U.S.C. § 3604(a) (emphasis added).

Section 3603(b) of the FHAA further provides:

Nothing in section 3604 of this title (other than subsection (c)) shall apply to --

(1) <u>any single-family house sold or rented by an owner</u>: *Provided,* That such private individual owner does not own more than three such single family houses at any one time: *Provided further*, That in the case of the sale of any such single-family house by a private owner individual not residing in such house at the time of such sale or who was not the most recent resident of such house prior to such sale, the exemption granted by this subsection shall apply only with respect to one such sale within any twenty-four month period: *Provided further,* That such bona fide private individual owner does not own any interest in, nor is there owned or reserved on his behalf, under any express or voluntary agreement, title to or any right to all or a portion of the proceeds from the sale or rental of, more than three such single family houses at any one time: *Provided further*, That after December 31, 1969, the sale or rental of any such single-family house shall be excepted from the application of this subchapter only if such house is sold or rented (A) without the use of any manner of the sales ro rental facilities or the sales or rental services of any real estate broker, agent, or salesman, or of such

15

> facilities or services of any person in the business of selling or renting dwellings, or of any employee or agent of any such broker, agent, salesman, or person and (B) without the publication, posting or mailing, after notice, of any advertisement or written notice in violation of section 3604(c0 of this title; but nothing in this proviso shall prohibit the use of attorneys, escrow agents, abstractors, title companies, and other such professional assistance as necessary to perfect or transfer the title . . . .

42 U.S.C. § 3603(b) (emphasis added).

Plaintiff's Amended Complaint is devoid of any allegation(s) that Margaret Messmer has ever owned more than three (3) single-family houses or condominiums at any one time; that she has owned or reserved on her behalf, title to or any right to all or a portion of the proceeds from the sale or rental of, more than three (3) single family houses or condominiums; during the time between April and June 2005 when Messmer was attempting to sell her unit to Marija Dunn, that Messmer used in any manner the sales or rental facilities or the sales or rental services of any real estate broker, agent, or salesman, or such facilities or services of any such person in the business of selling or renting dwellings, or of any employee or agent of any such broker, agent, salesman, or person; and / or  that Messmer published, posted or mailed any advertisement or written notice to the public regarding the availability of her unit for sale or rent.

Accordingly, the Court finds that the proposed sale of the Messmer unit to Marija Dunn, was clearly <u>exempt</u> from the provisions of the FHAA and, thus, the Court cannot find that the conduct of any Defendant implicates § 3604.  Further, the Amended Complaint is completely devoid of any allegation(s) that either Messmer or the individual Council members engaged in any attempt to "coerce, intimidate, threaten, or interfere" with the proposed sale of the Messmer

unit and, thus, the Court cannot find that the conduct of Messmer or the individual Council members implicates § 3617 of the FHAA.

However, assuming *arguendo*, that the FHAA applies to the proposed sale, the Amended Complaint fails to state a cause of action because Plaintiff never made a *bona fide* offer to purchase the Messmer unit.

Under section 3604(a), an essential element for a claim of discrimination in the sale or rental of a dwelling is the making of a *bona fide*[8] offer. The nature and sincerity of Plaintiff's alleged "matching offers" for the Messmer unit has previously been adjudicated against her. Specifically, the Court of Common Pleas expressly found in the State Action, *inter alia*, that:

(1)     Plaintiff would never buy the Messmer unit "as-is", which was a material term of the Dunn offer;

(2)     Plaintiff would not match the $83,00 sales price of the Dunn offer;

(3)     When Plaintiff was given an opportunity to purchase the Messmer unit on exactly the same material terms as Messmer had negotiated with Dunn, Plaintiff refused to buy the Messmer unit;

(4)     Plaintiff had "no proper basis" and "no good faith justification" for her attempts to force Messmer to sell the Messmer unit to her; and

(5)     Plaintiff's claims that she pursued acquisition of the Messmer unit in good faith were not credible.

*See* Findings of Fact, Non-Jury Verdict and Order of Court, February 1, 2008.

Defendants argue that the claims brought against them for the proposed sale of the Messmer unit are barred by the doctrine of collateral estoppel. The defense of collateral estoppel or issue preclusion requires that (i) the issue decided in the prior adjudication must be

---

[8]     "Bona fide" is defined as "1.  made in good faith; without fraud or deceit.  2.  Sincere; genuine."  Black's Law Dictionary 199 (9th ed. 2004)

identical with the one presented in the later action; (ii) there must have been a final judgment on

the merits; (iii) the party against whom collateral estoppel is asserted must have been a party or

in privity with the party to the prior adjudication; and (iv) the party against whom collateral

estoppel is asserted must have had a full and fair opportunity to litigate the issue in question in

the prior adjudication.

All four factors are unquestionably present in the case *sub judice*.  On the face of the

Amended Complaint, it is clear that the claims regarding the proposed sale of the Messmer unit

are the same claims and issues which have been litigated on prior occasions by Plaintiff.

Moreover, a review of the record establishes that Margaret Messmer was a party to the State

Action brought by Plaintiff which involved the same claims and issues, *i.e.*, alleged

discrimination in the proposed sale of the Messmer Unit, and Council and its members are

without doubt in privity with Ms. Messmer.

As noted *supra*, Plaintiff's challenges to the proposed sale of the Messmer unit has been

the subject of a prior State Action and prior complaints filed with the Pittsburgh Commission

and HUD.  The Court finds and rules that the instant Amended Complaint is yet another attempt

to re-litigate this same issue.  Accordingly, Plaintiff's claims are barred by the doctrine of issue

preclusion and the claims in her Amended Complaint surrounding the proposed sale of the

Messmer unit will be dismissed.

B.    Alleged Housing Discrimination in the Operation and Maintenance of Negley Park

In addition to alleged discrimination in the proposed sale of the Messmer unit, Plaintiff also alleges that the Council and its individual members have discriminated against her in the maintenance and operation of Negley Park.

"To make out a *prima facie* case under [the FHAA], a plaintiff can show either discriminatory treatment . . . or discriminatory effect alone, without proof of discriminatory intent . . . ." *Doe v. Butler,* 892 F.2d 315, 323 (3d Cir.1989) (citations omitted).   The Amended Complaint only addresses the theory of "discriminatory treatment;" thus, the Court does not need to separately address the theory of "discriminatory effect."

For Plaintiff to succeed on a "discriminatory treatment" claim, she must show that Defendants adopted and carried our their policies with regard to the operation and maintenance of Negley Park with the intent to discriminate against her because of her disability and / or race. *See Congdon v. Strine*, 854 F. Supp. 355, 360 (E.D. Pa. 1994).


1.    Claims Against Council Members in Their Individual Capacities

In order to be liable for discrimination under the FHAA, a person must have the capacity and/or authority to discriminate in the sale or rental of housing.  *See Michigan Protection and Advocacy Svc., Inc. v. Babin*, 799 F. Supp. 695, 712 (E. D. Mich. 1992) (Congress intended FHAA to apply only to those persons who are "in a position directly to deny a member of a protected group his housing rights.")

Where a person does not have the direct authority or capacity to discriminate in the sale or rental of housing, he or she can nevertheless be liable under the FHAA for actual

coercion, violence, threats of violence, and extreme intimidation.  42 U.S.C. § 3617.  The

Individual Defendants, Messmer, Flati, and O'Kane, did not have the power or capacity to

discriminate against Plaintiff in the maintenance or operation of Negley Park, except in their

official capacity as officers of Council.  Although Plaintiff names the Council members

individually, all of her allegations regarding the individual Council members refer or relate to

alleged conduct undertaken by them in their capacity as Council officers.  Furthermore, Plaintiff

does not allege that the Individual Defendants have ever engaged in any physical violence,

threats of physical violence, or extreme intimidation or coercion.

Accordingly, Plaintiff has failed to state a cause of action against the Council

members in their individual capacities for discrimination in the maintenance and operation of

Negley Park and the Council members in their individual capacities will be dismissed from this

action.


2.      Claims Against Council and Council Members, in their Official
        Capacities, For Housing Discrimination Based on Disability

On its face, the Amended Complaint fails because it provides no detail

whatsoever as to Plaintiff's  "permanent disabilities" other than her vague reference to being

"elderly, and having a "crippled leg" and "poor vision in low light."

However, assuming *arguendo*, that the Plaintiff is handicapped under the FHAA,

the Amended Complaint is completely devoid as to any factual discriminatory practices in

which the Council and its individual members allegedly engaged and that interfered with her

use and enjoyment of her condominium unit as a handicapped person.  Without doubt, the

Amended Complaint sets forth many complaints about Council and how it operates, all to

Plaintiff's disliking, but there are absolutely no allegations that set forth a nexus between a cognizable handicap under the FHAA and any discriminatory practice or policy of Council and/or its individual members.  Accordingly, the Court will dismiss in their entirety Plaintiff's claims of disability discrimination brought under the FHAA.

3.  <u>Claims Against Council and Council Members,  in their official capacities, For Housing Discrimination in the Operation and Maintenance of Negley Park</u>

Defendants argue that the claims brought against them for discrimination in the operation and maintenance of Negley Park are barred by the doctrine of res judicata[9] because there is complete identity between this action and the State Action with respect to these claims and that the Court of Common Pleas of Allegheny County and the Superior Court of Pennsylvania have rejected Plaintiff's claims.  The Court agrees.

Res judicata precludes parties from relitigating matters that have already been resolved by a court of competent jurisdiction in a prior action, as well as matters that could have been raised in that prior action.  *Allen v. McCurry*, 449 U.S. 90, 94 (1980).

First, in this lawsuit, just as she did in the State Action, Plaintiff seeks dissolution of the Council and Negley Park.  Next,  in this lawsuit, just as she did in the State Action, Plaintiff claims that Council's failure to hold elections and annual meetings, failure to provide budgets and operating statements, and failure to make repairs and/or improvements to Negley Park all are motivated by discriminatory animus and intent.  Finally, the parties and

---

[9]      "Res judicata" bars relitigation of the same cause of action between the same parties where there is a prior judgment, whereas "collateral estoppel" bars relitigation of a particular issue or determinative fact.

capacities in which they have been sued are identical in this federal lawsuit and in the State Action.

Moreover, the findings and conclusions of the Pittsburgh Commission also have a preclusive effect on Plaintiff's claims in this lawsuit for discrimination in the operation and maintenance of Negley Park.   The findings and conclusions of administrative agencies have a preclusive effect upon subsequent litigation if the agency was acting in a judicial capacity and resolved disputed issues of fact that the parties had an adequate opportunity to litigate. *University of Tennessee v. Elliott*, 478 U.S. 788 (1986).

An agency acts in a judicial capacity when it provides for representation by counsel, pretrial discovery, the opportunity to submit memoranda of law, examination and cross-examination of witnesses, the opportunity to introduce exhibits, the chance to object to evidence, and issues final findings of fact and conclusions of law.  *See Reed v. Amax Coal Co.*, 971 F.2d 1295, 1300 (7th Cir. 1992).

Pursuant to the City of Pittsburgh Code, the Pittsburgh Commission has the power and duty to "hold public hearings, subpoena witnesses and compel their attendance, administer oaths, take the testimony of any person under oath, and in connection therewith require the productions of evidence relating to any matter under investigation or any question before the Commission, make findings of fact, issue orders and publish such findings of fact and orders and do all other things necessary and proper for the enforcement of this Article." Pittsburgh Code at § 653.05.  The Pittsburgh Commission's Rules and Regulations expressly provide for the entire range of pretrial discovery, including interrogatories, subpoenas, depositions, document requests and requests for admissions.  *See* Rule 9, Pittsburgh Commission Rules and Regulations.

The evidence of record reflects that Plaintiff was represented by counsel in the proceedings before the Pittsburgh Commission, testified before the Pittsburgh Commission, submitted evidence and exhibits to the Pittsburgh Commission, and the Pittsburgh Commission made final findings of facts and conclusions of law.  As such, the Court finds that the Pittsburgh Commission assuredly acted in a judicial capacity.

The Pittsburgh Commission expressly found that Plaintiff had not come forward with sufficient evidence to substantiate her housing discrimination claims.  Plaintiff never appealed that decision to the Court of Common Pleas.

Accordingly, for all these reasons, the Court finds that Plaintiff is precluded from relitigating her claims for dissolution of Council and Negley Park and for alleged discrimination by Council in the operation and maintenance of Negley Park and all such claims will be dismissed from the Amended Complaint.

However, assuming *arguendo* that res judicata does not preclude Plaintiff from relitigating these claims, the Court finds that Plaintiff has not pled any facts to establish that the Defendants had any discriminatory motive with regard to the operation and maintenance of Negley Park.

Plaintiff alleges that Defendants were motivated by a discriminatory intent, but she offers nothing to support her claims other than her own "unsupported assertions, conclusory allegations, or mere suspicions."  The failure to make repairs and/or improvements to Negley Park doubtless vexed all the tenants, not solely Plaintiff.

C.      Statute of Limitations

The Court also finds and rules that Plaintiff's claims as to the proposed sale of

the Messmer unit are barred by FHAA's two-year statute of limitations.  42 U.S.C. § 3613.

Messmer and Dunn entered into a contract to sell the Messmer unit in early 2005.   Plaintiff

allegedly notified Council and Messmer that she would match the Dunn offer on May 15, 2005.

The original Complaint was filed on August 20, 2009, clearly in excess of two (2) years from

the dates surrounding the proposed sale of the Messmer unit.

As to Plaintiff's claims that Council acted with discriminatory intent and

motives, the overwhelming majority of these claims are also time barred by the applicable two-

year statute of limitations.  The allegations contained in the Complaint and Amended Complaint

involved incidents primarily occurring between the years of 2003 and 2006.

In an effort to avoid the statute of limitations problem, however, Plaintiff

amended her Complaint to add allegations that the "roof continues to leak in 2009, as of the

date of this filing [December 31, 2009], water pooling in the bedroom due to a roof leak;"

Amended Complaint, at 11, ¶ 2; and that "officers reelected themselves back on council" on

March 9, 2009.  As explained *supra,* the Court does not find that these actions of Council were

motivated by a discriminatory intent.


D.      Leave to Amend

If a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a

curative amendment unless an amendment would be inequitable or futile.  *Alston v. Parker*, 363

F.3d 229, 235 (3d Cir. 2004).  A district court must provide the plaintiff with this opportunity

even if the plaintiff does not seek leave to amend.  *Id.*  Even if a plaintiff does not seek leave to

amend the complaint after the defendant moves for dismissal, unless the district court finds that amendment would be inequitable or futile, the Court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 102 (3d Cir. 2002).  The district court may dismiss the action if the plaintiff does not file an amended complaint within that time, or if the plaintiff files a notice of her intent to stand on the complaint as filed.

The Court finds and rules that it would be futile to allow Plaintiff to again amend her complaint in this action.  Plaintiff's claims in the present action share a common nucleus of operative facts, claims, and issues with her prior State Action and complaints made with the Pittsburgh Commission, all of which have been fully litigated, and are therefore barred by issue and/or claim preclusion.  Furthermore, Plaintiff's claims surrounding the proposed sale of the Messmer unit and the vast majority of her claims regarding Council's discriminatory intent and motives are barred by the applicable statutory two-year statute of limitations.  An amended complaint could not alter these legal conclusions.

## CONCLUSION

For all the above stated reasons, the Court finds that the Amended Complaint should be dismissed in its entirety with prejudice.

An appropriate Order follows.

McVerry, J.

25

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

CAROLE L. TAYLOR,              )

               )

        Plaintiff,      )

               )

     v.           )     02: 09-cv-1116

               )

MARGARET MESSMER,        )

PATRICIA O'KANE, ANTHONY J. FLATI  )

AND RICHARD A. FLATI, Co-Executors  )

of the Estate of Theresa Flati, and    )

NEGLEY PARK HOMEOWNERS      )

ASSOCIATION COUNCIL,       )

               )

        Defendants.    )

**ORDER**

AND NOW, this 9th day of February, 2010, in accordance with the foregoing

Memorandum Opinion, it is hereby **ORDERED, ADJUDGED AND DECREED** that the

MOTION TO DISMISS AMENDED COMPLAINT filed by Defendant Negley Park

Homeowners Association and the  MOTION TO DISMISS PLAINTIFF'S AMENDED

COMPLAINT filed by Defendants Margaret Messmer, Patricia O'Kane and Theresa Flati are

**GRANTED.**   Plaintiff's Amended Complaint and Petition for Temporary Restraining Order

are **DISMISSED WITH PREJUDICE**.

The Clerk of Court is directed to docket this case closed.

BY THE COURT:

<u>s/Terrence F. McVerry</u>
United States District Court Judge

cc:      Carole L. Taylor
           1406 North Negley Avenue
           Pittsburgh, PA 15206
           (via Regular United States Postal Mail and
           Certified Mail, Return Receipt Requested)

           Robert J. Williams, Esquire
           Schnader, Harrison, Segal & Lewis
           Email: rwilliams@schnader.com

           Robert J. Garvin, Esquire
           Goldberg, Kamin & Garvin
           Email: robertg@gkgattorneys.com